UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICKY J. BRICKHOUSE,<br><br>           Petitioner-Defendant. | Case No. 14-CV-963 (KMK)<br>Case No. 09-CR-1118 (KMK)<br><br>OPINION & ORDER |

Appearances:

Rickey J. Brickhouse
*Pro Se Petitioner*

Gina Castellano, Esq.
Assistant United States Attorney
United States Attorney's Office
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

       Pro se petitioner Ricky J. Brickhouse ("Petitioner") has filed a Petition, pursuant to 28

U.S.C. § 2255, to vacate, set aside, or correct his sentence. For the reasons stated herein, the

Petition is dismissed.

I.  Background

       On August 24, 2010, a grand jury returned a superseding indictment against Petitioner in

two counts. The first count charged Petitioner with conspiracy to violate the narcotics laws of

the United States, from January through June 2009, by distributing and possessing with intent to

distribute 50 grams and more of cocaine base, in a form commonly known as "crack," in

violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A).

(Presentence Investigation Report ("PSR") ¶¶ 1–3.)  The second count charged Petitioner with distributing and possessing with intent to distribute five grams and more of crack on or about April 14, 2009, in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.  (*Id.* ¶ 4.)

Petitioner pled guilty to both charges on September 10, 2010 pursuant to a plea agreement dated September 2, 2010 (the "Plea Agreement").  In the Plea Agreement, Petitioner and the Government stipulated that the base offense level was 28, as Petitioner was responsible for approximately 138 grams of crack.  (*See* Mem. of Law of the United States of America in Opp'n to Pet'r Ricky J. Brickhouse's Mot. To Vacate and Set Aside His Conviction and Sentence ("Gov't Mem.") Ex. A ("Plea Agreement"), at 3 (Dkt. No. 18, 14-CV-963 Dkt.).)[1] Petitioner and the Government also agreed that two levels should be added, pursuant to U.S.S.G. § 2D1.1(b)(14)(E), because Petitioner committed the offense as part of a pattern of criminal conduct engaged in as a livelihood.  (*Id.*)[2]  Finally, the Parties agreed that there should be a three-level reduction, pursuant to U.S.S.G. § 3E1.1, for timely acceptance of responsibility.  (*Id.* at 4.)  As a result of these agreed-to calculations, the stipulated base total offense level was 27. (*Id.*)  Petitioner and the Government further agreed that Petitioner had 10 criminal history points,

---

[1] The Plea Agreement was entered into after enactment of the Fair Sentencing Act of 2010 ("FSA"), codified at 21 U.S.C. § 841(b)(1), but before the FSA's proposed changes to the Guidelines had been adopted by the Sentencing Commission.  As a result, the Plea Agreement contained two separate sections wherein the offense level was calculated, one using the November 2009 (pre-FSA) Guidelines that were in effect at the time of the plea, and one using the anticipated FSA-amendments to the Guidelines.  Because the Parties agreed that the total offense level was the same under both sets of Guidelines, they agreed to use the projected Guidelines to calculate the stipulated Guidelines Range.

[2] This enhancement was based on the proposed changes to the Guidelines in the FSA.

thus placing him in Criminal History Category V.  (*Id.* at 4–5.)  This Criminal History Category, combined with the total offense level of 27, yielded a Guidelines Range of 120 to 150 months' imprisonment, with a mandatory minimum sentence of 120 months' imprisonment.  (*Id.* at 5.)

The Plea Agreement also contained a waiver, which provided that Petitioner would not "file a direct appeal," "nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255," "nor seek a sentence modification" of any "sentence within or below the Stipulated Guidelines Range of 120 to 150 months' imprisonment."  (*Id.* at 6.)  The Parties further agreed that this "provision [was] binding on the parties even if the Sentencing Commission revises the Guidelines in a manner different from the Projected Revised Guidelines Analysis set forth [in the Plea Agreement]."  (*Id.*)

Before accepting Petitioner's plea, the Court conducted a thorough Rule 11 allocution.  In particular, the Court confirmed that Petitioner was competent to enter a guilty plea, that he was fully aware of his constitutional rights and the waiver of many of those rights should he plead guilty, that he had had enough time to talk about the case with his attorney and was satisfied with his attorney's representation of him, that he was aware of the charges against him, and that he was aware of the statutory maximum and mandatory minimum sentences he faced.  (Gov't Mem. Ex. B ("Plea Tr.") 7–40.)  The Court also advised Petitioner that it was the Court, and only the Court, that would determine the appropriate sentence to impose, and that the Court was not bound by what the Parties agreed to in the Plea Agreement regarding the Guidelines Range.  (*Id.* at 34–35.)  The Court also informed Petitioner that it was not required to impose a sentence within the applicable Guidelines Range.  (*Id.* at 35.)  And, the Court specifically discussed with Petitioner the meaning and significance of the waiver provision, advising him that if the Court

3

"impose[d] a sentence of 150 months or down to zero," under that provision, he had "agreed that [he] [would] not appeal or legally challenge [that sentence]." (*Id.* at 37–38.) Finally, the Court found that there was a sufficient legal and factual basis for the plea and that Petitioner was pleading guilty because he was guilty. (*Id.* at 43–44.)[3]

In advance of sentencing, the Probation Department prepared a PSR. In the PSR, the Probation Department arrived at a different Guidelines calculation than the Parties did in the Plea Agreement. According to the Probation Department, the total offense level was 25 (and not 27, as calculated by the Parties), (PSR ¶¶ 18–25), and Petitioner was in Criminal History Category IV (and not V, as suggested by the Parties), (*id.* ¶¶ 30–51). The resulting Guidelines Range was 84–105 months' imprisonment, (*id.* ¶ 101), but because the high end of this range was below the mandatory minimum, the operative Guidelines Range was 120 months' imprisonment, (*id.*).

Also in advance of sentencing, Petitioner's counsel (Francisco Celedonio) submitted a 25-page letter to the Court arguing, among other things, that under the FSA, Petitioner was facing a mandatory minimum of 60 months' imprisonment (instead of 120 months), and, in fact, asking the Court to impose a sentence of 60 months' imprisonment. (*See* Gov't Mem. Ex. C ("Celedonio Letter").) Among other things, the FSA raised the threshold quantities of crack that triggered the mandatory minimum (and maximum) provisions of the narcotics laws. For example, prior to the FSA's enactment, five grams of crack was sufficient to trigger the five-year mandatory minimum, under Title 21, United States Code, Section 841(b)(1)(B), and 50 grams was the threshold for the ten-year mandatory minimum, under Title 21, United States Code,

---

[3] In his allocution, Petitioner admitted that he agreed with at least one other individual to sell crack in Peekskill between January and June 2009, and that he possessed at least 30 grams of crack as part of his role in the conspiracy. (Plea Tr. 40–43.)

4

Section 841(b)(1)(A).  Before the FSA, the same mandatory minimums required the sale of 500

grams and 5 kilograms of cocaine, amounting to a 100-1 ratio of cocaine to crack.  Under the

FSA, which reduced the cocaine-to-crack ratio from 100-1 to 18-1, the new threshold amounts

for crack became 28 and 280 grams, respectively.  Left open by the FSA, however, was whether

it applied to defendants who violated the narcotics laws before August 3, 2010, the date of

enactment, but who had not yet been sentenced.  At the time of Petitioner's sentencing, the law

in the Second Circuit was that the FSA did not apply retroactively.  *See United States v. Diaz*,

627 F.3d 930, 931 (2d Cir. 2010) (holding that the FSA did not apply to defendants convicted

and sentenced before the FSA) (citing *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir.

2010) ("[B]ecause the FSA took effect . . . after appellant committed his crimes 1 U.S.C. § 109

bars the Act from affecting his punishment."")).[4]  Undaunted by this legal landscape, counsel

argued in his letter that the Court should apply the FSA to Petitioner and sentence him to the

lower mandatory minimum.

---

[4] Just one week after the sentence in this case, the Second Circuit cited *Diaz* in rejecting precisely the argument that Petitioner's attorney did not make in his pre-sentence submission: that the FSA should apply to those whose crimes pre-dated the FSA, but whose sentences post-dated the Act.  *See United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011) ("Although Acoff argues that the savings statute does not foreclose retroactive application of the FSA, we recently have held otherwise." (citing *Diaz*, 627 F.3d at 931)), *abrogation recognized by United States v. Lee*, 660 F. App'x 8 (2d Cir. 2016).

Of course, as Petitioner notes, the Supreme Court ultimately concluded otherwise, holding that the FSA did apply to those whose criminal conduct pre-dated the FSA, but who had not yet been sentenced by the time of the Act's enactment.  *See Dorsey v. United States*, 132 S. Ct. 2321, 2336 (2012).  However, *Dorsey* was not decided until over a year after Petitioner was sentenced, contrary to Petitioner's assertion.  (Mem. of Points & Authorities in Supp. of Pet'r's Mot. To Vacate and Set Aside Conviction & Sentence Pursuant to 28 U.S.C. § 2255 ("Pet'r's Mem.") 5 (incorrectly asserting that *Dorsey* was decided before Petitioner's sentence)).

The Court imposed the sentence on February 8, 2011.  At sentencing, the Court fully complied with the requirements of Fed. R. Crim. P. 32—confirming that the Parties had read the PSR and had an opportunity to lodge any objections to it.  (Gov't Mem. Ex. D ("Sentencing Tr.") 5–8.)  The Court also conducted its own Guidelines calculation, ultimately adopting the calculation set forth in the PSR and concluding that the Guidelines Range was the 120-month mandatory minimum.  With regard to the retroactive application of the FSA, the Court noted that it already had determined that the FSA did not apply to defendants whose criminal conduct pre-dated the statute's enactment, and declined Petitioner's counsel's request to re-consider its ruling.  (*Id.* at 4–5.)  In light of this ruling, counsel for Petitioner then asked the Court to impose the minimum sentence of 120 months' imprisonment.  (*Id.* at 9.)

The Court imposed the mandatory minimum sentence of 120 months' imprisonment, finding, after considering all the factors set forth in 18 U.S.C. § 3553(a), that it was the sentence that was sufficient but no more than necessary to achieve the goals of the sentencing laws.  (*Id.* at 17–23.)  The Court also imposed the minimum term of supervised release (5 years) and a mandatory special assessment of $200.  (*Id.* at 23–24.)  At the end, the Court advised Petitioner that to the extent he had not waived it, he had the right to appeal the sentence.  (*Id.* at 27.)[5]  The judgment of conviction was filed and entered on April 19, 2011, and Petitioner filed a notice of appeal on April 22, 2011.

On July 15, 2011, the United States Department of Justice changed its tune on the retroactive application of the FSA.  Instead of resisting such application of the FSA, which had

---

[5] The Court questioned whether the waiver would apply to any appeal based on the applicability of the FSA.  (Sentencing Tr. 27.)

6

been the Department's posture dating back to the enactment of the FSA, the Justice Department

announced that it now held the view that the FSA should apply to all sentences that occurred

after August 3, 2010, regardless of when the offense conduct took place.  (*See* Gov't  Mem. 10.)

Four months later, Petitioner's counsel filed his brief in support of Petitioner's appeal.  In that

brief, counsel strenuously argued that the combination of the FSA itself and the Justice

Department's changed policy mandated reversal of the sentence.  (*See* Gov't Mem. Ex. E).  In

response, the Government moved to dismiss the appeal, relying principally on the appeal waiver

in the Plea Agreement.  (*See* Gov't Mem. Ex. F.)  While the Government's motion was pending,

the Supreme Court held that the FSA applied to defendants sentenced after August 3, 2010,

irrespective of when the underlying offense conduct occurred.  *See Dorsey v. United States*, 132

S. Ct. 2321, 2336 (2012).  On August 15, 2012, the Second Circuit denied the Government's

motion to dismiss Petitioner's appeal.  However, on November 6, 2012, the Second Circuit held

that *Dorsey*, even though altering the law regarding the retrospective applicability of the FSA,

did not constitute an extraordinary circumstance that would deem an appellate waiver

unenforceable.  *See United States v. Harrison*, 699 F.3d 158, 159 (2d Cir. 2012).  Relying on

*Harrison*, the Second Circuit subsequently rejected Petitioner's appeal.  *See United States v.*

*Brickhouse*, 517 F. App'x 22, 23 (2d Cir. 2013).  In particular, the panel held:

> The colloquy at Brickhouse's plea hearing makes clear that the appeal waiver was
> knowing and voluntary (*see* Plea Hr'g Tr. 36–38 (Sept. 10, 2010)), and such a
> waiver is not contrary to public policy.  Brickhouse's appeal waiver was valid when
> his plea was entered, and the waiver did not lose its effectiveness when the district
> court in a subsequent proceeding made statements arguably inconsistent with that
> waiver. . . .
>
> Even though the Supreme Court has since determined, in [*Dorsey*], that the [FSA]
> may apply retroactively to criminal conduct completed before the Act's effective

7

date, the change in law does not render Brickhouse's appellate waiver
unenforceable.

*Id.* The Second Circuit therefore dismissed the appeal.

Petitioner subsequently filed the instant § 2255 Petition.

## II.  Discussion

### A. Standard of Review of § 2255 Petitions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only
"upon the ground that the sentence was imposed in violation of the Constitution or laws of the
United States, or that the court was without jurisdiction to impose such sentence, or that the
sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral
attack."  28 U.S.C. § 2255(a).[6]  "Because collateral challenges are in tension with society's
strong interest in the finality of criminal convictions, the courts have established rules that make
it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."
*Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks
omitted).  To prevail on a collateral attack of a final judgment under § 2255, a petitioner must
demonstrate either the existence of a "constitutional error . . . or an error of law or fact that
constitutes a fundamental defect which inherently results in a complete miscarriage of justice."

---

[6] Title 28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed in
violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

8

*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *1 (S.D.N.Y. Nov. 25, 2013), *aff'd*, — F. App'x —, 2017 WL 659893 (2d Cir. Feb. 15, 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). To justify a hearing, the petition must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle the petitioner to relief. *See Gonzalez*, 722 F.3d at 131. Finally, because Petitioner is appearing pro se, the Court construes the Petition liberally and interprets it to raise the strongest arguments that it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

B. Waiver

Petitioner claims he is entitled to relief under § 2255 because his trial and appellate counsel were ineffective. In particular, Petitioner asserts his counsel was ineffective because he failed to prevail upon the Court to impose a sentence that was consistent with the FSA, (Pet. 5 (Dkt. No. 2, 14-CV-963 Dkt.)), and because he did not have Petitioner evaluated for "his mental illness" and present any such evaluation in mitigation at sentence, (*id.*). These claims, however, are barred, at least in part, by the waiver provision of the Plea Agreement.

9

As noted above, Petitioner agreed that he would not "file a direct appeal," or litigate "under Title 28, United States Code, Section 2255 . . . any sentence at or below the Stipulated Guidelines Range . . . ."  (Plea Agreement 6.)  The Court specifically highlighted this provision for Petitioner during the colloquy at sentencing.  To the extent Petitioner is challenging his sentence, which was within the Stipulated Guidelines Range, Petitioner must first overcome the hurdle imposed by this provision.  *See Flamenco v. United States*, No. 11-CV-633, 2014 WL 775000, at *3 (E.D.N.Y. Feb. 24, 2014) ("Where a defendant knowingly and voluntarily waives his right to appeal [or bring a collateral challenge] if his sentence falls at or below a stipulated range pursuant to the plain language of a plea agreement, a challenge to the sentence must be dismissed.").

"Waivers of the right to appeal a sentence are presumptively enforceable."  *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010); *see also Twine v. United States*, No. 12-CV-227, 2014 WL 119370, at *4 (E.D.N.Y. Jan. 10, 2014) (noting that appeal waiver provisions are "presumptively enforceable").  Indeed, the Second Circuit has "repeatedly upheld the validity of such waivers" where they are "knowingly, voluntarily, and competently provided by the defendant."  *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *see also United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable.").  "A knowing and voluntary waiver of the right to litigate pursuant to [§] 2255 is also valid and enforceable."  *Abramo v. United States*, No. 12-CV-1803, 2014 WL 1171735, at *8 (S.D.N.Y. Mar. 21, 2014); *see also Frederick v. Warden, Lewisberg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral

attack rights in a plea agreement."); *Russo v. United States*, 313 F. Supp. 2d 263, 265 (S.D.N.Y. 2004) ("The [Second] Circuit has specifically held that a waiver of a right to appeal in a plea agreement includes a waiver of a right to file a § 2255 petitioner challenging his or her sentence." (citing *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995))).

A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). In determining whether a defendant understood the consequences of a waiver, the district court is "entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood . . . that he was waiving his right to appeal a sentence below [the Stipulated Guidelines Range]." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *see also Abramo*, 2014 WL 1171735, at *9 (same).

The "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *Gomez-Perez*, 215 F.3d at 319. One area where the presumptive enforceability of a waiver may be overcome is by "an attack on the validity of the process by which the waiver has been procured, here, the [Plea Agreement]." *Frederick*, 308 F.3d at 195.[7] For example, waivers do not prevent defendants from seeking relief

---

[7] There are other exceptions that can invalidate a waiver. *See Karimu v. United States*, Nos. 13-CV-1689, 10-CR-422, 2013 WL 4017168, at *3–4 (S.D.N.Y. Aug. 6, 2013) (discussing circumstances barring the application of a sentence/collateral challenge waiver provision in a plea agreement). One occurs when a court imposes a sentence based on certain "constitutionally impermissible factors," such as a defendant's race, ethnicity, or other prohibited biases. *See Gomez-Perez*, 215 F.3d at 319; *see also United States v. Johnson*, 347 F.3d 412, 414–15 (2d Cir. 2003) (indigent status); *United States v. Jacobson*, 15 F.3d 19, 22–23 (2d Cir. 1994) (naturalization status). Relatedly, a court's abdication of its judicial responsibility, by failing to offer *any* rationale for its sentence, can invalidate a waiver. *See United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). Another exception involves a breach of the plea agreement by the

from the underlying plea where "[a]n ineffective assistance of counsel claim . . . concerns the advice the defendant received from counsel."  *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (alteration and internal quotation marks omitted).  In such circumstances, the waiver is deemed not to have been knowing or voluntary.  *See id.* at 138–39.  In recognizing this exception, however, the Second Circuit has distinguished between "challenging the attorney's role in shaping the defendant's bargaining position[,] [which] cannot avoid the waiver, [and] challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's decision with the attorney's conduct."  *Id.*  In the latter case, the challenge is to the "constitutionality of the *process* by which [the defendant] waived [his right to appeal]."  *Id.* at 138 (second alteration in original).  "Thus, a claim of ineffective assistance that is unrelated to the plea bargaining process does not provide a basis upon which to invalidate a waiver of the right to challenge the conviction by appeal or by a [§] 2255 proceeding."  *Abramo*, 2014 WL 1171735, at *10.  This means, for example, that a claim of ineffective assistance is waived when it relates to counsel's performance at sentencing.  *See Djelevic*, 161 F.3d at 107 (holding that a claim that counsel was ineffective "not at the time of the plea, but at sentencing" does not survive the waiver); *Abramo*, 2014 WL 1171735, at *10 (noting that "counsel's alleged deficiencies at sentencing are . . . barred by [the] [p]etitioner's knowing and voluntary waiver of the right to collaterally attack the sentence" (internal quotation marks omitted)).

---

Government.  *See Gomez-Perez*, 215 F.3d at 319.  None of these circumstances has been, nor could be, alleged here.

As noted, it is beyond dispute that Petitioner entered into the Plea Agreement and that Petitioner acknowledged that he fully understood the terms of this agreement, including the waiver provision. *See Ferreira-Torres v. United States*, Nos. 08-CV-8025, 02-CR-1347, 2010 WL 2594909, at *2 (S.D.N.Y. June 28, 2010) (noting that the record established the petitioner's knowing and voluntary waiver of his right to bring a § 2255 challenge to a sentence within the stipulated Guidelines Range). Indeed, in rejecting Petitioner's appeal, the Second Circuit held that Petitioner's "plea hearing makes clear that the appeal waiver was knowing and voluntary." *Brickhouse*, 517 F. App'x at 23. As a result, Petitioner's claims are waived in whole or in part by the Plea Agreement.

One of these waived claims is that counsel erred by failing to argue that the FSA should have applied to Petitioner's sentence. As a general matter, a sentence "conceivably imposed in an illegal fashion or in violation of the Guidelines," which did not even happen here, will not invalidate a waiver when the sentence imposed is within the stipulated Guidelines Range in the agreement. *Gomez-Lopez*, 215 F.3d at 319; *see also United States v. Bilal*, 941 F. Supp. 2d 397, 402–03 (S.D.N.Y. 2013) (rejecting as waived a § 2255 challenge to a sentence on a claim, among others, that the court miscalculated the petitioner's criminal history). As noted above, to the extent that Petitioner quibbles with counsel's advocacy at sentencing, his claim is covered by the waiver in the Plea Agreement. *See Djelevic*, 161 F.3d at 107 (noting that if courts "were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless"). Put differently, Petitioner's claim regarding counsel's sentencing advocacy is really a challenge to the Court's determination that the FSA did not apply to Petitioner's

13

sentence.  *See id.* (noting that the defendant's challenge to counsel's performance at sentencing was an "effort to dress up his claim as a violation of the Sixth Amendment" that "in reality" was a challenge to "the correctness of his sentence under the Sentencing Guidelines"); *United States v. Marte*, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011) ("[The petitioner's] claim of ineffective assistance of counsel appears to be a backdoor attempt to attack his sentence.").  Yet, it is precisely this claim that he knowingly and voluntarily waived in the Plea Agreement.  *See Harrison*, 699 F.3d at 159 (holding that the change in the law announced in *Dorsey* regarding the retroactive application of the FSA was "not sufficient to upset a valid waiver of appeal"); *Oldyn v. United States*, Nos. 14-CV-307, 10-CR-94, 2014 WL 3417465, at *12–14 (report and recommendation) (S.D.N.Y. July 8, 2014) (recommending dismissal of habeas petition claiming ineffective assistance of counsel based on failure of counsel to successfully argue for application of the FSA at sentencing, finding it waived in the plea agreement); *cf. United States v. Concepcion*, Nos. 09-CV-4537, 06-CR-743, 2009 WL 4884095, at *1–2 (S.D.N.Y. Dec. 16, 2009) (finding a § 2255 challenge to a sentence within the stipulated Guidelines Range based on a claim that a lawyer promised the petitioner he would receive a below-Guidelines sentence to be waived in the plea agreement); *Diaz v. United States*, No. 02-CV-3036, 2002 WL 31545835, at *1 (E.D.N.Y. Sept. 27, 2002) ("To the extent [the petitioner] . . . challenges his sentence either on *Apprendi* grounds or because counsel is alleged to have been constitutionally ineffective at sentencing, his claim is barred by his plea agreement.").  Therefore, the Court concludes that Petitioner has waived this claim.[8]

---

[8] In any event, as discussed further below, it is beyond dispute that Petitioner's counsel did, in fact, argue that the Court should apply the FSA to Petitioner, meaning, among other things, that the mandatory minimum dropped from 120 to 60 months.  Indeed, in both his lengthy

Also waived is Petitioner's claim that counsel erred by not procuring and submitting a mental health evaluation, especially to the extent this claim is meant to target the sentence the Court imposed.[9]  In particular, this type of ineffective assistance claim, which does not involve counsel's advice in connection with the Plea Agreement, is routinely found to be covered by an appeal waiver such as the one in the Plea Agreement here.  *See Ramirez-Hernandez v. United States*, No. 09-CV-4107, 2012 WL 1838286, at *4 (E.D.N.Y. May 21, 2012) (rejecting claim that counsel was ineffective for failing to seek a downward departure because of an appeal waiver provision); *United States v. Cano*, 494 F. Supp. 2d 243, 250–51 (S.D.N.Y. 2007) (finding a claim that counsel erred in recommending the petitioner pursue a *Fatico* hearing was waived by sentencing agreement barring the petitioner from challenging any sentence within stipulated Guidelines Range); *Moore v. United States*, Nos. 00-CV-4560, 98-CR-833, 2001 WL 253432, at *16 (S.D.N.Y. Mar. 15, 2001) ("Counsel's alleged failure to seek a *Fatico* hearing is not an ineffective assistance claim that relates to the validity of [the petitioner's] plea or the waiver itself."); *Psihountas v. United States*, No. 98-CV-7066, 2000 WL 739548, at *2 (S.D.N.Y. 2000) (dismissing ineffective assistance claim premised on a failure to press certain downward departure arguments because they were forfeited by appeal waiver provision).

---

pre-sentence letter to the Court and during the sentencing proceeding itself, Petitioner's counsel forcefully argued that the Court should reconsider its own rulings in other cases on the question and apply the FSA to Petitioner.  (*See* Celedonio Letter 3–6, 15–16, 22–24; Sentencing Tr. 3–6.)

[9] To the extent Petitioner's claim is that he was not competent to enter a guilty plea, that claim is not waived, but is meritless for reasons discussed below.

15

C.  Ineffective Assistance of Counsel

Even if not waived, counsel's ineffective assistance claims lack any merit.  As noted, Petitioner claims his counsel was ineffective because he supposedly failed to argue that Petitioner should have been sentenced under the FSA.  In particular, Petitioner claims that because *Dorsey*, which as noted held that the FSA applied retrospectively, had been decided before his sentence, it was constitutionally ineffective for counsel not to argue for its application. Petitioner also claims that counsel was ineffective for failing to argue that the Supreme Court's decision in *Freeman v. United States*, 564 U.S. 522 (2011), also should have applied to reduce Petitioner's sentence.  Apart from the FSA, Petitioner also claims that counsel was ineffective for failing to have Petitioner evaluated for any mental illness.  All of Petitioner's claims are without merit.

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "First, the [petitioner] must show that counsel's performance was deficient."  *Strickland*, 466 U.S. at 687.  "Second, the [petitioner] must show that the deficient performance prejudiced the defense."  *Id.*

16

Petitioner cannot meet the first prong based solely on disagreements with counsel's strategy or advice.  Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013).  Thus, to satisfy this prong, Petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also McNaught v. United States*, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009) (same).  Measuring this probability depends on the context of the alleged error.  Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002) (internal quotation marks omitted), *abrogated on other grounds by Padilla v. Kentucky*, 599 U.S. 256 (2010).  In the sentencing

context, a petitioner must demonstrate that but for counsel's ineffective assistance, a different sentence was probable.  *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997).

Judged under this demanding standard of review, Petitioner's claims of ineffective assistance fail.  First, regarding the FSA, it is simply untrue that counsel neglected to ask the Court to apply the FSA to Petitioner's case.  In both his pre-sentence letter and during the sentencing proceeding itself, counsel repeatedly urged the Court to apply the lower mandatory minimum called for by the FSA.  (*See* Celedonio Letter 3–6, 15–16, 22–24; Sentencing Tr. 3–6.) For example, counsel cited various district court opinions applying the FSA retrospectively to defendants in the same position as Petitioner: those who committed crimes before the FSA, but who were sentenced after it was passed.  (*See* Celedonio Letter 15–16).  According to counsel, these opinions were an "eloquent exposition in favor of the applicability of the FSA to the facts . . . in the present case." (*Id.* at 16.)  And, at sentencing, counsel implored the Court to sua sponte change its earlier ruling and apply the FSA to Petitioner.  (Sentencing Tr. 3–5.)  Having failed to persuade this Court to apply the FSA, counsel persisted in his quest, arguing to the Second Circuit, both on his direct appeal and in opposition to the Government's motion to dismiss the appeal, that the FSA should have been applied to Petitioner.  Indeed, the vast majority of counsel's brief to the Second Circuit on the direct appeal was dedicated to the question of the FSA's applicability to Petitioner.  (*See* Gov't Mem. Ex. E.)  Thus, the undisputed record is that counsel did all he could to have his client sentenced under the more lenient FSA regime, both in this Court and in the Second Circuit.  That his efforts did not succeed is, of course, no reflection on counsel.

Similarly unpersuasive is Petitioner's claim that counsel was ineffective for failing to invoke the Supreme Court's decision in *Freeman v. United States*.  First, *Freeman* involved an

18

issue that had no bearing on this case.  In *Freeman*, the question was whether a defendant who entered into a Rule 11(c)(1)(C) plea agreement that recommended a particular sentence as a condition of the plea was eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).[10]  564 U.S. at 525.  The Supreme Court answered the question in the affirmative, but that provides no relief to Petitioner here.  First, Petitioner is not seeking, in this Petition, relief from a Guidelines sentence he received.  Indeed, he cites to no retroactive amendment to the Guidelines that applies to his case.  Second, even if there was a retroactive modification of the Guidelines, that would not be a basis to lower Petitioner's sentence, which was dictated by the mandatory minimum in effect at the time.  *See United States v. Williams*, 551 F.3d 182, 185–86 (2d Cir. 2009) (holding that the defendant was ineligible for modification of a sentence under § 3582(c)(2) "because his sentence was based on the statutory mandatory minimum").  Second, counsel can hardly be faulted for not invoking *Freeman* at sentencing, as it was not decided until June 2011, well after Petitioner's sentence.  *See Mayo*, 13 F.3d at 533 ("Counsel is not required to forecast changes in the governing law.").  Thus, there is no basis to conclude, on the undisputed record, that counsel was constitutionally ineffective.  At every opportunity, he made all the arguments he could about why Petitioner should have been sentenced under the FSA.[11]

---

[10] Section 3582(c)(2) permits a defendant sentenced based on a sentencing ranged that has been reduced by way of a retroactive amendment to the Guidelines to move for a reduced sentence.

[11] There also is no truth to Petitioner's claim that counsel was ineffective for failing to object to and raise on appeal the "scant reasoning provided by the sentencing Judge," and that "the sentence fails to meet the objectives of § 3553(a)."  (Pet'r's Mem. 7.)  The Court gave consideration to all the factors set forth in 18 U.S.C. § 3553(a) (after previously noting that it read counsel's 25-page letter), and then discussed the most important of those factors.  (Sentencing Tr. 17–23.)  Thus, there would have been no basis to object to the reasoning, as it was hardly "scant."  In any event, the Court could not have imposed a lower sentence than that mandated by the applicable statutory minimum, so there could be no claim of prejudice from counsel's performance as it related to the § 3553(a) factors.

Finally, there is no merit to Petitioner's assertion that counsel was ineffective for failing to request a mental health evaluation to determine Petitioner's "competen[cy] to understand the nature and consequence of the offense and proceedings."  ((Mem. of Points & Authorities in Supp. of Pet'r's Mot. To Vacate & Set Aside Conviction & Sentence Pursuant to 28 U.S.C. § 2255, 10.)  First, Petitioner offers no evidence that he was incompetent, let alone that it was obvious to his counsel (or anybody else coming into contact with Petitioner) that Petitioner might be incompetent.  To be sure, as counsel described in some detail in his pre-sentence letter, Petitioner has a history of learning disabilities such as ADHD, violence, and depression, (*see* Celedonio Letter 8–14), but nothing in this letter suggested that Petitioner might be incompetent to understand the charges against him or to assist in his defense, *see Drope v. Missouri*, 420 U.S. 162, 171 (1975) (holding that a defendant is incompetent if he or she "lacks the capacity to understand the nature and object of the proceedings against him [or her], to consult with counsel, and to assist in preparing his [or her] defense").[12]  In other words, taking everything that was included in counsel's letter as true, there is nothing in the record suggesting that Petitioner was incompetent to proceed in this case, either with the plea or at sentencing.  *See United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial.").  Indeed, the Court conducted a thorough inquiry regarding Petitioner's mental health and narcotics abuse history during the plea, (Plea Tr. 8–11), before finding that Petitioner was competent to enter a plea, (*id.* at 11–12).  This finding bears substantial weight here.  *See Best v. Griffin*, No. 15-CV-4073, 2015 WL 6875016,

---

[12] By discussing this history, counsel clearly was inviting the Court to consider Petitioner's personal history, one of the prominent factors including in § 3553(a).  Thus, he hardly can be faulted for including this information in his pre-sentence letter, let alone accused of failing to advocate for a lower sentence based on his factor.

at *11 (S.D.N.Y. Nov. 6, 2015) ("[D]eference is owed to the [trial] court's determinations based on observation of the defendant during the [pretrial and trial] proceedings." (alterations in original) (internal quotation marks omitted)), *adopted by* 2016 WL 4030894 (S.D.N.Y. July 26, 2016), *appeal filed*, No. 16-2791 (Aug. 25, 2016). And, because Petitioner does not offer any more details regarding his personal history, let alone allege why he believes he was incompetent at the time of the plea and sentence, there is no basis to conclude his counsel was constitutionally ineffective for not requesting a mental competency evaluation for Petitioner, or that there is a need for a factual hearing to resolve this claim.

### III.  Conclusion

For the reasons discussed above, the Court dismisses Petitioner's Petition for Writ of Habeas Corpus.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

        The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent

and to close this case.

SO ORDERED.

DATED:        March *16*, 2017
              White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

22